UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTIMETRIK CORP.,

    Plaintiff,

v.

L. FRANCIS CISSNA, Director,
U.S. Citizenship and Immigration
Services,

    Defendant.

_____/

Case No. 18-10116

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT [14]**

Plaintiff Altimetrik Corporation ("Plaintiff") filed this lawsuit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, against Defendant L. Francis Cissna as Director of the United States Citizenship and Immigration Services ("USCIS"). Plaintiff seeks judicial review of USCIS's decision to deny two petitions for an H-1B visa it had filed on behalf of its employees, Mr. Madhuranthakum and Mr. Garlapati. The matter is now before the Court on Plaintiff's motion for summary judgment. (Dkt. 14.) For the reasons discussed below, the Court DENIES Plaintiff's motion and upholds the USCIS's denials.

**I.    Background**

Plaintiff is "an information technology 'professional services' organization, specializing in IT project management and solutions." (Dkt. 11-1, Pg ID 155.) Plaintiff originally filed this lawsuit on January 10, 2018, seeking review of the denials of an H-1B visa for five of its employees. (Dkt. 1.) On June 22, 2018, Plaintiff filed an amended

1

complaint, voluntarily dismissing three of those claims. (Dkt. 7.) Thus, only the petitions filed for Mr. Madhuranthakum and Mr. Garlapati remain relevant.

Plaintiff filed its petition on behalf of Mr. Madhuranthakum on September 13, 2017. (Dkt. 11-2, Pg ID 646-65.) He was employed by Plaintiff and had a valid H-1B visa at the time but a new work location prompted the petition.[1] (*Id.* at Pg ID 563.) In support of the current petition seeking to employ him as a software developer working at the Ford Accelerated Solutions Center, Plaintiff submitted purchase orders between itself and Ford, a copy of a service agreement between itself and Ford, and information about Plaintiff. (*See id.* at Pg ID 667.) Plaintiff also included a description of the beneficiary's duties on form I-129. (*Id.* at Pg ID 653.)

USCIS issued a request for evidence on October 27, 2017, requesting further information regarding the employer-employee relationship and whether the position qualified as a specialty occupation. (*Id.* at Pg ID 667-74.) Plaintiff submitted purchase orders to document the relationship between Plaintiff and Ford, a statement of work between the two for their current project, an employment agreement, pay stubs, a performance review, and an organizational chart showing the beneficiary's supervisory chain. (*See id.* at Pg ID 675.) On December 28, 2017, USCIS denied the petition, concluding that the position did not qualify as a specialty occupation and that Plaintiff had failed to demonstrate that it would have an employer-employee relationship with Mr. Madhuranthakam. (*Id.* at Pg ID 522-34.)

---

[1] In fact, USCIS had approved a H-1B visa for Mr. Madhuranthakum twice in the past. (Dkt. 8, Pg ID 49.)

2

On March 29, 2018, after the filing of this lawsuit, USCIS reopened the petition to provide Plaintiff an additional opportunity to satisfy its burden of proof regarding the application. It issued a notice of intent to deny, requesting additional documentation to address the reasons for denial. (*Id.* at Pg ID 510-20.) Plaintiff submitted copies of agreements between itself and Ford, a statement of work showing the extension of a project to December 2018, and invoices Plaintiff issued to Ford for IT services. (*Id.* at Pg ID 439-507.) USCIS again denied the petition, finding that the software developer position did not qualify as a specialty occupation and that the evidence was insufficient to demonstrate that specialty occupation work was available with Ford for the entire requested period. (*Id.* at Pg ID 417-27.)

Plaintiff filed its petition for a H-1B visa on behalf of Mr. Garlapati on July 25, 2017. (Dkt. 11-1, Pg ID 380-99.) He too had a valid H-1B visa at the time but was working for a different employer. (*Id.* at Pg ID 369.) Plaintff sought to employ him as a senior software engineer working at Silicon Valley Bank ("SVB"). (*Id.* at Pg ID 387.) Plaintiff included along with its petition promotional materials, an employment agreement, a contract between SVB and Plaintiff, and degrees and transcripts for Mr. Garlapati. (*See id.* at Pg ID 262.)

On October 24, 2017, USCIS issued a request for evidence, requesting additional evidence regarding the employer-employee relationship and whether the position qualified as a specialty occupation. (*Id.* at Pg ID 230-34.) Plaintiff responded by submitting a position description letter, an affidavit concerning Plaintiff's hiring practices for similar positions, a statement of work between SVB and Plaintiff, a performance review, an organizational chart, and pay stubs. (*Id.* at Pg ID 150-227.) On

December 15, 2017, USCIS denied the petition, finding that the senior software engineer position did not qualify as a specialty occupation. (*Id.* at Pg ID 136-43.)

On March 29, 2018, after the filing of this suit, USCIS re-opened the petition and issued a notice of intent to deny. The notice identified deficiencies in the petition relating to the issues of whether the position was a specialty occupation and whether there was going to be an employer-employee relationship. (*Id.* at Pg ID 123-33.) Plaintiff responded by submitting a letter from its attorney and a letter from a representative of SVB. (*Id.* at Pg ID 115-20.) On June 1, 2018, USCIS denied the petition, finding that Plaintiff failed to satisfy its burden of proof regarding whether the position was a specialty occupation and whether the beneficiary would be performing services in a specialty occuatpion for the requested period. (Dkt. 16-1, Pg ID 772-83.)

Plaintiff filed its motion for summary judgment on September 22, 2018.[2] (Dkt. 14.) USCIS filed a response to Plaintiff's motion and Plaintiff filed a reply. (Dkts. 16, 18.) The Court heard oral arguments on the motion on December 12, 2018.

**II.    Standard of Review**

When a federal court is reviewing final agency action, the usual rules and standards governing summary judgment do not apply. *See Alexander v. Merit Sys. Prot. Bd.*, 165 F.3d 474, 480-81 (6th Cir. 1999); *Integrity Gymnastics & Pure Power Cheerleading, LLC v. U.S. Citizenship & Immigration Servs.*, 131 F. Supp. 3d 721, 725 (S.D. Ohio 2015). Summary judgment simply "'serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record

---

[2] Because both denials were based on the same grounds and used the same reasoning, the parties addressed them together in their briefs.

4

and is otherwise consistent with the APA standard of review.'" *Singh v. Johnson*, No. 15-cv-12957, 2016 U.S. Dist. LEXIS 82890, at *7 (E.D. Mich. June 27, 2016) (quoting *Resolute Forest Prods., Inc. v. U.S. Dep't of Agric.*, 187 F. Supp. 3d 100, 106 (D.D.C. 2016)).

Under the APA, the federal courts may "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995). In reviewing agency action under this narrow standard, the reviewing court may not substitute its judgment for that of the agency even if the court may disagree with the agency's decision. *Marsh v. Oregon Nat. Res. Council*, 490 U.S. 360, 378 (1989); *Simms*, 45 F.3d at 1003.

The reviewing court must base its review on the administrative record and may not consider any new evidence. *Alexander*, 165 F.3d at 481. The agency action may be reversed only

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view of the product of agency expertise.

*Simms*, 45 F.3d at 1004 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

An agency's factual findings are reviewed under the substantial evidence standard. *See Steeltech, Ltd. V. U.S. Envtl. Prot. Agency*, 273 F.3d 652, 657 (6th Cir. 2001). Under this standard, review of an agency's "factual determinations is limited to

determining whether those determinations are supported by substantial evidence on the record as a whole -- not whether there was substantial evidence in the record for a result other than that arrived at by the [agency]." *Id.* In the immigration context, a particular agency finding "can be reversed only if a reasonable factfinder would have to reach another conclusion," in other words "if the evidence compels a conclusion other than the one the agency reached." *Smith v. Chater*, 99 F.3d 780, 782 n.3 (6th Cir. 1996) (citing *Immigration and Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)).

III. Analysis

    A. **Applicable Law and Regulations**

The H-1B employment visa permits a non-immigrant to be admitted into the United States "to perform services . . . in a specialty occupation described in section [1184(i)(1)]." 8 U.S.C. § 1101(a)(15)(H)(i)(b). In order to qualify for a H-1B visa, "the petitioning employer and the alien beneficiary must satisfy a two-prong test: '(1) the position that the alien seeks to occupy must qualify as a specialty occupation; and (2) the alien must herself be qualified to perform services in said occupation.'" *EG Enters. v. Dep't of Homeland Sec.*, 467 F. Supp. 2d 728, 734 (E.D. Mich. 2006) (quoting *Shanti, Inc. v. Reno*, 36 F. Supp. 2d 1151, 1153 (D. Minn. 1999)). The burden of proof is on the employer and the non-immigrant to prove both prongs of the test. *Id.* at 734 (citing 8 U.S.C. § 1361).

A "specialty occupation" is one requiring "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the

occupation in the United States." 8 U.S.C. § 1184(i)(1). The Code of Federal Regulations further states that a

> specialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii). Because this list is non-exhaustive, USCIS has set forth four criteria, one of which a position must satisfy to qualify as a "specialty occupation:"

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree; (3) The employer normally requires a degree or its equivalent for the position; or (4) The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

### B. Whether the Positions are Specialty Occupations

There is no dispute that the two beneficiaries are qualified to perform services in a "specialty occupation" because they hold a foreign degree equivalent to a United States baccalaureate or higher degree from an accredited college or university. Instead, the issue is whether the positions offered by Plaintiff qualify as "specialty occupations" under the applicable rules and regulations. Thus, only the first prong of the two-prong test is at issue here.

The Court first notes that while all four criteria in 8 C.F.R. § 214.2(h)(4)(iii)(A) refer to a "baccalaureate or higher degree" or the "degree requirement," USCIS requires

that the degree be "in a specific specialty" due to 8 C.F.R. § 214.2(h)(4)(ii), which states that a specialty occupation "requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent." The "specific specialty" language is also found in the statute. *See* 8 U.S.C. § 1184(i)(1)(B). Many of Plaintiff's arguments boil down to its objection to this requirement. However, courts have found requiring that the bachelor's degree be in a specific specialty "well-settled in the case law and USCIS's reasonable interpretations of the regulatory framework." *Chung Song Ja Corp v. U.S. Citizenship & Immigration Servs.*, 96 F. Supp. 3d 1191, 1197 (W.D. Wash. 2015); *see also CareMax Inc. v. Holder*, 40 F. Supp. 3d 1182, 1187 (N.D. Cal. 2014) (noting that this requirement is consistent with the purpose of the H-1B visa, which is "to reach outside the U.S. to fill a temporary position because of a special need, presumably one that cannot be easily fulfilled within the U.S."). The Court therefore agrees that a generalized bachelor's degree requirement is not a sufficient basis for a H-1B visa. Having established that USCIS did not err when it required the bachelor's degree requirement be in a specific specialty, the Court will turn to USCIS's application of the regulatory framework.

The first regulatory criterion states that a position qualifies as a specialty occupation if "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." 8 C.F.R. § 214.2(h)(4)(iii)(A). In making a determination as to whether a particular position requires a bachelor's degree in a specific specialty, USCIS relies on the United States Department of Labor's Occupational Outlook Handbook ("the Handbook"). *See Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 146 (1st Cir. 2007) ("the choice of what reference materials to consult is quintessentially within an agency's discretion – and, thus, courts

8

routinely have approved [US]CIS's practice of consulting the Handbook"). According to the Handbook, software developers are required to have a bachelor's degree in a specific specialty. However, USCIS does not take the title of the position provided by the petitioning employer at face value. *See Fast Gear Distrib. v. Rodriguez*, 116 F. Supp. 3d 839, 846 (E.D. Mich. 2015) (noting that "USCIS considers the job duties of the offered position along with the petitioning employer's business operations to make a determination if the position actually requires skills of someone with a bachelor's degree" in a specific specialty). Here, USCIS compared the list of duties provided by Plaintiff with the description and list of duties set forth in the Handbook for a software developer and found that they did not closely align. (*See* dkt. 11-2, Pg ID 419-22; dkt. 16-1, Pg ID 774-78.) Instead, USCIS found that the duties of the positions offered by Plaintiff were more similar to that of a computer systems analyst.

Regarding the education required for a computer systems analyst, the Handbook states the following, in relevant part: "[a] bachelor's degree in a computer or information science field is common, although not always a requirement. Some firms hire analysts with business or liberal arts degrees who have skills in information technology or computer programming." (*See* dkt. 11-2, Pg ID 422.) As a result, USCIS concluded that "the position of computer systems analyst is an occupation that does not require a baccalaureate level of education in a specific specialty as a normal minimum for entry into the occupation." (*Id.* at Pg ID 423; dkt. 16-1, Pg ID 778.) USCIS therefore found that Plaintiff did not satisfy its burden of proof with regard to the first criterion.

The second criterion states that a position qualifies as a specialty occupation if "[t]he degree requirement is common to the industry in parallel positions among similar

9

organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree." 8 C.F.R. § 214.2(h)(4)(iii)(A). Regarding the first prong of this criterion, USCIS noted that according to the Handbook, a systems analyst is not required to have a bachelor's degree in a specific specialty. Moreover, Plaintiff did not submit evidence from industry-related professional associations or from other firms or individuals in the industry that would go towards the issue of the degree requirement in the industry. (Dkt. 11-2, Pg ID 423; dkt. 16-1, Pg ID 779.) Regarding the second prong of the criterion, USCIS found that the evidence did not demonstrate that the positions were so complex or unique that they could only be performed by an individual with a degree in a specific specialty. (Dkt. 11-2, Pg ID 424; dkt. 16-1, Pg ID 779-80.)

The third criterion states that a position qualifies as a specialty occupation if "[t]he employer normally requires a degree or its equivalent for the position." 8 C.F.R. § 214.2(h)(4)(iii)(A). Regarding this standard, in the case of Mr. Madhuranktakam, USCIS noted that Plaintiff did not submit evidence that it normally requires a degree in a specific specialty for his position,[3] (Dkt. 11-2, Pg ID 424.), and in the case of Mr. Garlapati, USCIS noted that Plaintiff did not satisfy its burden of proof because it only submitted educational and pay documents regarding 20 of the 70 employees it employs as a software developer.[4] USCIS also noted that according to *Defensor v. Meissner*, 201 F.3d 384, 388 (5th Cir. 2000), a petitioner is required to show that the entity

---

[3] USCIS noted that Plaintiff itself had stated that it would hire someone with a degree in a computer-related field *or* with a degree in engineering.

[4] Some of those employees had degrees in business administration, information technology, or engineering.

10

ultimately employing the beneficiary, and not the entity who hires the beneficiary, requires a bachelor's degree for its employees in that position. Here, the beneficiaries were to be working off-site, at Ford and SVB. But Plaintiff did not submit evidence regarding whether Ford and SVB normally required a degree or its equivalent in a specific specialty for the position. (*See* dkt. 11-2, Pg ID 424; dkt. 16-1, Pg ID 780.)

The fourth criterion states that a position qualifies as a specialty occupation if "[t]he nature of the specific duties are so specialized and complex that the knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree." 8 C.F.R. § 214.2(h)(4)(iii)(A). Again, USCIS relied on its previous analysis regarding the job duties and found that Plaintiff did not establish that the duties were so specialized and complex that they required a bachelor's degree in a specific specialty. (Dkt. 11-2, Pg ID 425; dkt. 16-1, Pg ID 780-81.)

Plaintiff responds by arguing that USCIS's conclusions that the positions were really that of a systems analyst and not a software developer were arbitrary and capricious. However, the Court finds that USCIS carefully considered the proffered job duties and found that the beneficiaries would be providing support to already existing programs, similar to a computer systems analyst, and would not be designing, developing, or building applications and/or systems, as would be expected from a software developer or senior software engineer. (Dkt. 11-2, Pg ID 422; dkt. 16-1, Pg ID 778.) USCIS noted that statements from Plaintiff's counsel that the beneficiaries would be developing software did not suffice without additional corroborating evidence.

Plaintiff also argues that even if it sought to hire the beneficiaries as systems analysts, they would still qualify for a H-1B visa because the Handbook states that

11

"most computer systems analysts have a bachelor's degree in a computer-related field." (Dkt. 11-2, Pg ID 422.) The Handbook, however, makes it clear that a degree in a computer-related field is not required and "[s]ome firms hire analysts with business or liberal arts degrees." See id.; see also CareMax, 40 F. Supp. 3d at 1187-88 (stating that "[a] position that requires applicants to have any bachelor's degree, or a bachelor's degree in a large subset of fields, can hardly be considered specialized"). Thus, USCIS is entitled to deference in its finding that systems analysts are not required to have a bachelor's degree in a specific specialty.

Plaintiff also argues that even though the beneficiaries would be working off-site, Plaintiff is their employer. In addition, Plaintiff disagrees with USCIS's reliance on *Defensor*. Because USCIS also found that Plaintiff did not satisfy its burden of proof in establishing that it normally requires a degree in a specific specialty for the positions at issue, there is no need to address these arguments. Even if Plaintiff is the relevant employer and the concerns in *Defensor* therefore inapplicable, Plaintiff did not present sufficient evidence to satisfy its burden of proof with regard to the third criterion.

Because USCIS relied on the correct legal standards and regulations and considered the evidence in the record, its findings are entitled to deference and the Court will not substitute its judgment for that of the agency's even if it disagrees with the result.[5] The Court therefore finds that USCIS's findings that the positions did not qualify

---

[5] The Court notes that USCIS had approved a H-1B visa for the same beneficiairies performing services in the same positions in the past but denied the visas this time. The denials will therefore create a disruption in the lives of two individuals who have lived and worked in the United States for years. The Court concludes, however, that under the applicable standard of review and with the current record, it must defer to the agency.

as specialty occupations based on the record before it were not arbitrary, capricious, or an abuse of discretion.[6]

## IV.  Conclusion

For the above-stated reasons, the Court DENIES Plaintiff's motion for summary judgment and upholds the USCIS's denials.

SO ORDERED.


                                        s/Nancy G. Edmunds
                                        Nancy G. Edmunds
                                        United States District Judge

Dated: December 17, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 17, 2018, by electronic and/or ordinary mail.

                                        s/Lisa Bartlett
                                        Case Manager

---

[6] Because the Court upholds USCIS's findings that Plaintiff did not demonstrate that the positions were specialty occupations, there is no need to address USCIS's second finding regarding whether the beneficiaries would perform the services during the requested period of employment.

The Court also notes that USCIS had relied on its findings regarding the employer-employee relationship in its original denials, but these findings were not part of the final decisions. Thus, there is also no need to address that issue.